IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | No. 6:22-CR-*62* |
| v. | § | JUDGE _JCB/JDL_ |
| | § | |
| JOHN KHUU (01) | § | **UNDER SEAL** |

## INDICTMENT

THE UNITED STATES GRAND JURY CHARGES:

### General Allegations

At all times relevant to this Indictment:

<u>Defendant</u>

1.     **John Khuu** resided in or around San Francisco, California, within the Northern District of California.

<u>Financial Institutions</u>

2.     Wells Fargo Bank, N.A. (Wells Fargo) was a "financial institution," as defined by Title 18, United States Code, Section 1956.  It was based in San Francisco, California, within the Northern District of California.

3.     JPMorgan Chase Bank, N.A. (JPMorgan Chase) was a "financial institution," as defined by Title 18, United States Code, Section 1956.  It was based in New York, New York, within the Southern District of New York.

4.     Bank of America, N.A. (Bank of America) was a "financial institution," as defined by Title 18, United States Code, Section 1956.  It was based in Charlotte, North Carolina, within the Western District of North Carolina.

Indictment – Page 1

5.      Citibank, N.A. (Citibank) was a "financial institution," as defined by Title 18, United States Code, Section 1956.  It was based in New York, New York, within the Southern District of New York.

Terminology

6.      Cryptocurrency, a type of virtual currency, is a decentralized, peer-to peer, network-based medium of value or exchange that may be used as a substitute for fiat currency to buy goods or services or exchanged for fiat currency or other cryptocurrencies.

7.      Bitcoin (BTC) is a type of cryptocurrency.

8.      The "deep web" is the portion of the Internet not indexed by search engines, such as internal networks belonging to private industry, government agencies, or academic institutions.  The "dark web" is a portion of the deep web that has been intentionally hidden and is inaccessible through standard web browsers.

9.      To access the dark web, individuals must use specialized software to access content and websites.  Within the dark web, criminal marketplaces operate, allowing individuals to buy and sell illegal items, such as drugs, firearms, and other hazardous materials, with greater anonymity than is possible on the traditional Internet (sometimes called the "clear web" or simply the "web").  These online market websites use a variety of encryption technologies to ensure that communications and transactions are shielded from interception and monitoring, and operate similarly to clear web commercial websites such as Amazon or eBay, but offer illicit goods and services.

10.     "Vendors" are the dark web's sellers of goods and services, often of an illicit nature, and they do so through the creation and operation of "vendor accounts" on dark web

marketplaces (DWMs).  Customers, meanwhile, operate "customer accounts."  Vendor and
customer accounts are not identified by numbers, but rather monikers or "handles," much
like the username a person would use on a clear web site.

11.     If a moniker on a particular marketplace has not already been registered by
another user, vendors and customers can use the same moniker across multiple
marketplaces, and based on seller and customer reviews, can become well known as
"trusted" vendors or customers.  It is possible for the same person to operate multiple
customer accounts and multiple vendor accounts at the same time.

12.     Utilizing the dark web, the defendant, **John Khuu**, created vendor accounts
on DWMs, in order to sell counterfeit pharmaceutical pills and other controlled substances,
in the Northern District of California and elsewhere.

13.     These DWMs served to facilitate the illegal commerce conducted on the site,
by concealing the identities and locations of **John Khuu** and his customers.

14.     Beginning in or around January of 2020, the exact date being unknown to the
Grand Jury, **John Khuu** distributed counterfeit pharmaceutical pills and other controlled
substances on DWMs to various customers across the United States.  Customers who
ordered counterfeit pharmaceutical pills and other controlled substances on DWMs from
**Khuu** paid for their purchases by transferring cryptocurrency, usually BTC, from their
DWM customer accounts to one of **Khuu's** vendor accounts.  **Khuu** would then ship
counterfeit pharmaceutical pills and other controlled substances directly to addresses
provided by the customers, who often used aliases, through interstate commerce, via the
U.S. Mail and other shipping services.

## COUNT 1

Violation:  18 U.S.C. § 1956(h)
(Conspiracy to Commit Money
Laundering)

1.      The General Allegations section of this indictment is realleged and
incorporated by reference as though fully set forth herein.

2.      From in or about January 2020, and continuing through in or about October
2020, the exact dates being unknown to the Grand Jury, in the Eastern District of Texas, and
elsewhere, the defendant, **John Khuu**, did knowingly combine, conspire, and agree with
other persons, known and unknown to the Grand Jury, to commit offenses against the
United States in violation of 18 U.S.C. §§ 1956 and 1957, that is:

    a.      to knowingly conduct and attempt to conduct financial transactions
            affecting interstate commerce and foreign commerce, which
            transactions involved the proceeds of specified unlawful activity, that
            is, possession with intent to distribute and distribution of controlled
            substances, in violation of 21 U.S.C. § 841(a)(1), and possession with
            intent to distribute and distribution of counterfeit substances, in
            violation of 21 U.S.C. § 841(a)(2), knowing that the transactions were
            designed in whole and in part to conceal and disguise the nature,
            location, source, ownership, and control of the proceeds of specified
            unlawful activity, and that while conducting and attempting to conduct
            such financial transactions, knew that the property involved in the

financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i);

b.  to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, possession with intent to distribute and distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1), and possession with intent to distribute and distribution of counterfeit substances, in violation of 21 U.S.C. § 841(a)(2), knowing that the transactions were designed in whole and in part to avoid a transaction reporting requirement under state and federal law, and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transactions, represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(ii); and

c.  to knowingly engage and attempt to engage, in monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, and such property having been derived from a specified unlawful activity, that is, possession with intent to distribute and distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1), and possession with intent to distribute and distribution of

counterfeit substances, in violation of 21 U.S.C. § 841(a)(2), in
violation of 18 U.S.C. § 1957.

### Manner and Means of the Conspiracy

The manner and means used to accomplish the objectives of the conspiracy included,
among others, the following:

3.      To achieve the goals of the conspiracy, **John Khuu** distributed counterfeit
pharmaceutical pills and other controlled substances on DWMs to various customers across
the United States.  Customers who ordered counterfeit pharmaceutical pills and other
controlled substances on DWMs from **Khuu** paid for their purchases by transferring
cryptocurrency, usually BTC, from their DWM customer accounts to one of **Khuu's** vendor
accounts.

4.      To further the conspiracy, **John Khuu** and his co-conspirators opened bank
accounts specifically to launder funds derived from the sale of counterfeit pharmaceutical
pills and other controlled substances on the DWMs.  **Khuu** and his co-conspirators would
have funds deposited into bank accounts and immediately withdraw or transfer these funds
to different accounts, in an attempt to avoid bank and law enforcement scrutiny.

5.      **John Khuu** sent his co-conspirators' bank account information to others who
agreed to receive criminal proceeds in the form of BTC.  For such accounts, **Khuu** would, at
a minimum, include the name on the account, address, the account numbers, and the routing
numbers.  The list below includes the accounts which **Khuu** provided:

| Bank | Account Name |
|---|---|
| Bank of America | HTH Resale LLC |
| Bank of America | Li Online Retail |
| Citibank | John Khuu |
| Citibank | Zelle: John Khuu |
| Citibank | Zelle: John Khuu (1995) |
| JPMorgan Chase | Andy La Sole Prop |
| JPMorgan Chase | Austin Mai Sole Proprietor |
| JPMorgan Chase | Benson Wan Sole Prop |
| JPMorgan Chase | Bowee Yu |
| JPMorgan Chase | Eric Yeung |
| JPMorgan Chase | Jelen Wu Sole Prop |
| JPMorgan Chase | Jenny Wu Sole Prop |
| JPMorgan Chase | Jimmy Suen Sole Prop |
| JPMorgan Chase | Jonathan Xu Sole Prop |
| JPMorgan Chase | Marvin Chen Sole Prop |
| JPMorgan Chase | Patrick Li |
| JPMorgan Chase | Patrick Li Sole Prop |
| JPMorgan Chase | SamSon Zheng Sole Proprietor |
| JPMorgan Chase | Tony Tan Sole Prop |
| Wells Fargo | Anthony Mui Sole Proprietor |
| Wells Fargo | Economy Connecting USA INC |
| Wells Fargo | Jeff Tung Sole Proprietor |
| Wells Fargo | Jessi Le Sole Prop |
| Wells Fargo | Lester Wong Sole Prop |

6.   On or about January 27, 2020:

   a.   **John Khuu** negotiated a trade of BTC for a counter cash deposit of $6,200.

   b.   A cash deposit of $6,200.00 was made into a Chase account designated by **Khuu** in the name of "Austin Mai Sole Proprietor."

   c.   After the deposit was completed, **Khuu** deposited the BTC into a specific cryptocurrency account controlled by an individual in the Eastern District of Texas.

7.    On or about January 27, 2020:

    a.    **John Khuu** negotiated a trade of BTC for a counter cash deposit of $500.00.

    b.    A cash deposit of $500.00 was made into a Chase account designated by **Khuu** in the name of "Austin Mai Sole Proprietor."

    c.    After the deposit was completed, **Khuu** deposited the BTC into a specific cryptocurrency account controlled by an individual in the Eastern District of Texas.

8.    On or about January 27, 2020:

    a.    **John Khuu** negotiated a trade of BTC for a counter cash deposit of $8,800.00.

    b.    A cash deposit of $8,800.00 was made into a Wells Fargo account designated by **Khuu** in the name of "Jeff Tung Sole Prop."

    c.    After the deposit was completed, **Khuu** deposited the BTC into a specific cryptocurrency account controlled by an individual in the Eastern District of Texas.

9.    On or about April 18, 2020:

    a.    **John Khuu** negotiated a trade of BTC for counter cash deposits of $31,000.00 and $6,460.00.

    b.    Thirteen separate cash deposits were made into accounts designated by **Khuu**.  The table below provides a summary of the transactions:

| Bank | Account Name | Amount |
|------|--------------|--------|
| Wells Fargo | Anthony Mui Sole Proprietor | $12,740.00 |
| Citibank | Zelle: John Khuu | $18,720.00 |
| JPMorgan Chase | Jonathan Xu Sole Prop | $6,000.00 |

    c.    After the deposits were completed, **Khuu** deposited the BTC into a specific cryptocurrency account controlled by an individual in the Eastern District of Texas.

10.    Beginning on or about April 30, 2020, and continuing to on or about May 7, 2020:

    a.    **John Khuu** negotiated trades of BTC for counter cash deposits totaling $473,248.00.

    b.    One hundred eighteen separate cash deposits were made into accounts designated by **Khuu**.  The table below provides a summary of the transactions:

| Bank | Account Name | Amount |
|------|--------------|--------|
| Bank of America | Li Online Retail | $13,413.00 |
| Citibank | Zelle: John Khuu | $31,232.00 |
| Citibank | John Khuu | $19,000.00 |
| Citibank | Zelle: John Khuu (1995) | $12,654.00 |
| JPMorgan Chase | Jelen Wu Sole Prop | $35,630.00 |
| JPMorgan Chase | Samson Zheng Sole Proprietor | $41,750.00 |
| JPMorgan Chase | Jonathan Xu Sole Prop | $35,225.00 |
| JPMorgan Chase | Marvin Chen Sole Prop | $45,335.00 |
| JPMorgan Chase | Jimmy Suen Sole Prop | $26,400.00 |
| JPMorgan Chase | Andy La Sole Prop | $8,700.00 |
| JPMorgan Chase | Benson Wan Sole Prop | $43,337.00 |
| JPMorgan Chase | Bowee Yu | $32,690.00 |
| JPMorgan Chase | Eric Yeung | $28,988.00 |
| JPMorgan Chase | Tony Tan Sole Prop | $15,680.00 |
| Wells Fargo | Anthony Mui Sole Proprietor | $83,214.00 |

c.     After the deposits were completed, **Khuu** deposited the BTC into a specific cryptocurrency account controlled by an individual in the Eastern District of Texas.

11.    On or about June 1, 2020:

a.     **John Khuu** negotiated a trade of BTC for counter cash deposits totaling $77,800.00.

a.     Sixteen separate cash deposits were made into accounts designated by **Khuu**.  The table below provides a summary of the transactions:

| Bank | Account Name | Amount |
|---|---|---|
| Citibank | Zelle: John Khuu (1995) | $500.00 |
| JPMorgan Chase | Austin Mai Sole Prop | $10,750.00 |
| JPMorgan Chase | Jelen Wu Sole Prop | $9,910.00 |
| JPMorgan Chase | Samson Zheng Sole Proprietor | $9,950.00 |
| JPMorgan Chase | Jonathan Xu Sole Prop | $9,900.00 |
| JPMorgan Chase | Marvin Chen Sole Prop | $9,900.00 |
| JPMorgan Chase | Jimmy Suen Sole Prop | $8,250.00 |
| JPMorgan Chase | Benson Wan Sole Prop | $8,640.00 |
| JPMorgan Chase | Bowee Yu | $10,000.00 |

12.    During the course of the conspiracy, **John Khuu** engaged in 478 financial transactions involving the sale of 622.90718 BTC in exchange for $5,356,828.28.

All in violation of 18 U.S.C. § 1956(h).

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE
### Pursuant to 18 U.S.C. § 982(a)(1)

1.     The allegations contained in Count 1 are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant has an interest.

2.     Upon conviction of any violation of 18 U.S.C. §§ 1956 or 1957, the defendant, **John Khuu**, shall forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1).

3.     The property which is subject to forfeiture, includes but is not limited to the following:

    a.   Cash Proceeds

       A sum of money equal to $5,356,828.28 in United States currency, and all interest and proceeds traceable thereto, representing the proceeds of the offense or the amount of property involved in the offense alleged in the indictment, for which the defendant is personally liable; and

    b.   All virtual currency, derived from and/or associated, with devices, storage methods, and softwares, including cold storage devices, paper wallets, software wallets, and ledgers associated with virtual currencies, private keys, and recovery seeds owned or controlled by **John Khuu**.

4.     Pursuant to 21 U.S.C. § 853(p), as incorporated by reference by 18 U.S.C. § 982(b), if any of the forfeitable property, or any portion thereof, as a result of any act or omission of the defendants:

    a.   Cannot be located upon the exercise of due diligence;

    b.   Has been transferred, or sold to, or deposited with a third party;

    c.   Has been placed beyond the jurisdiction of the Court;

    d.  Has been substantially diminished in value; or

    e.  Has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek the forfeiture of other property of the defendant up to the value of the above-described forfeitable properties, including, but not limited to, any identifiable property in the name of **John Khuu**.

By virtue of the commission of the offenses alleged in this indictment, any and all interest the defendant has in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to 18 U.S.C. § 982(a)(1).

All pursuant to 18 U.S.C. § 982(a)(1), and the procedures set forth at 21 U.S.C. § 853, as made applicable through 18 U.S.C. § 982(b)(1).


A TRUE BILL

_____
GRAND JURY FOREPERSON

5/18/2022
Date


BRIT FEATHERSTON
UNITED STATES ATTORNEY

_____
NATHANIEL C. KUMMERFELD
ASSISTANT UNITED STATES ATTORNEY

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | No. 6:22-CR- |
| v. | § | JUDGE |
| | § | |
| JOHN KHUU (01) | § | UNDER SEAL |

## NOTICE OF PENALTY

## COUNT 1

VIOLATION:        18 U.S.C. § 1956(h)
                 Conspiracy to Commit Money Laundering

PENALTY:         Imprisonment of not more than twenty (20) years; the greater of
                 a fine not to exceed $500,000 or twice the value of the monetary
                 instrument or funds involved in the transportation, transmission,
                 or transfer, whichever is greater, or both such imprisonment and
                 fine; and a term of supervised release of not more than three (3)
                 years.

SPECIAL ASSESSMENT: $100.00