IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | No. 6:22-CR-62 |
| v. | § | JUDGE JCB/JDL |
| | § | |
| JOHN KHUU | § | |

# INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

## General Allegations

At all times relevant to this Information:

Defendant

1. **John Khuu** resided in or around San Francisco, California, within the Northern District of California.

Financial Institutions

2. Wells Fargo Bank, N.A. (Wells Fargo) was a "financial institution," as defined by Title 18, United States Code, Section 1956. It was based in San Francisco, California, within the Northern District of California.

3. JPMorgan Chase Bank, N.A. (JPMorgan Chase) was a "financial institution," as defined by Title 18, United States Code, Section 1956. It was based in New York, New York, within the Southern District of New York.

4. Bank of America, N.A. (Bank of America) was a "financial institution," as defined by Title 18, United States Code, Section 1956. It was based in Charlotte, North Carolina, within the Western District of North Carolina.

5. Citibank, N.A. (Citibank) was a "financial institution," as defined by Title 18, United States Code, Section 1956. It was based in New York, New York, within the Southern District of New York.

Terminology

6. Cryptocurrency, a type of virtual currency, is a decentralized, peer-to peer, network-based medium of value or exchange that may be used as a substitute for fiat currency to buy goods or services or exchanged for fiat currency or other cryptocurrencies.

7. Bitcoin (BTC) is a type of cryptocurrency.

8. The "deep web" is the portion of the Internet not indexed by search engines, such as internal networks belonging to private industry, government agencies, or academic institutions. The "dark web" is a portion of the deep web that has been intentionally hidden and is inaccessible through standard web browsers.

9. To access the dark web, individuals must use specialized software to access content and websites. Within the dark web, criminal marketplaces operate, allowing individuals to buy and sell illegal items, such as drugs, firearms, and other hazardous materials, with greater anonymity than is possible on the traditional Internet (sometimes called the "clear web" or simply the "web"). These online market websites use a variety of encryption technologies to ensure that communications and transactions are shielded

from interception and monitoring and operate similarly to clear web commercial websites such as Amazon or eBay but offer illicit goods and services.

10. "Vendors" are the dark web's sellers of goods and services, often of an illicit nature, and they do so through the creation and operation of "vendor accounts" on dark web marketplaces (DWMs). Customers, meanwhile, operate "customer accounts." Vendor and customer accounts are not identified by numbers, but rather monikers or "handles," much like the username a person would use on a clear web site.

11. If a moniker on a particular marketplace has not already been registered by another user, vendors and customers can use the same moniker across multiple marketplaces, and based on seller and customer reviews, can become well known as "trusted" vendors or customers. It is possible for the same person to operate multiple customer accounts and multiple vendor accounts at the same time.

12. Utilizing the dark web, the defendant, **John Khuu**, created vendor accounts on DWMs, in order to sell counterfeit pharmaceutical pills and other controlled substances, in the Northern District of California and elsewhere.

13. These DWMs served to facilitate the illegal commerce conducted on the site, by concealing the identities and locations of **John Khuu** and his customers.

14. Beginning in or around January of 2020, the exact date being unknown, **John Khuu** distributed counterfeit pharmaceutical pills and other controlled substances on DWMs to various customers across the United States. Customers who ordered counterfeit pharmaceutical pills and other controlled substances on DWMs from **Khuu** paid for their purchases by transferring cryptocurrency, usually BTC, from their DWM

customer accounts to one of **Khuu's** vendor accounts.  **Khuu** would then ship counterfeit pharmaceutical pills and other controlled substances directly to addresses provided by the customers, who often used aliases, through interstate commerce, via the U.S. Mail and other shipping services.

## COUNT 1

Violation:  18 U.S.C. § 1956(h)<br>(Conspiracy to Commit Money Laundering)

1. The General Allegations section of this information is realleged and incorporated by reference as though fully set forth herein.

2. From in or about January 2020, and continuing through in or about October 2020, the exact dates being unknown, in the Eastern District of Texas, and elsewhere, the defendant, **John Khuu**, did knowingly combine, conspire, and agree with other persons, known and unknown, to commit offenses against the United States in violation of 18 U.S.C. §§ 1956 and 1957, that is:

> to knowingly engage and attempt to engage, in monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, and such property having been derived from a specified unlawful activity, that is, possession with intent to distribute and distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1), and possession with intent

to distribute and distribution of counterfeit substances, in violation of 21 U.S.C. § 841(a)(2), in violation of 18 U.S.C. § 1957.

## Manner and Means of the Conspiracy

The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

3. To achieve the goals of the conspiracy, **John Khuu** distributed counterfeit pharmaceutical pills and other controlled substances on DWMs to various customers across the United States. Customers who ordered counterfeit pharmaceutical pills and other controlled substances on DWMs from **Khuu** paid for their purchases by transferring cryptocurrency, usually BTC, from their DWM customer accounts to one of **Khuu's** vendor accounts.

4. To further the conspiracy, **John Khuu** and his co-conspirators opened bank accounts specifically to launder funds derived from the sale of counterfeit pharmaceutical pills and other controlled substances on the DWMs. **Khuu** and his co-conspirators would have funds deposited into bank accounts and immediately withdraw or transfer these funds to different accounts, in an attempt to avoid bank and law enforcement scrutiny.

5. **John Khuu** sent his co-conspirators' bank account information to others who agreed to receive criminal proceeds in the form of BTC. For such accounts, **Khuu** would, at a minimum, include the name on the account, address, the account numbers, and the routing numbers. The list below includes the accounts which **Khuu** provided:

| Bank | Account Name |
|---|---|
| Bank of America | HTH Resale LLC |

**Information – Page 5**

| Bank | Account Name |
|---|---|
| Bank of America | Li Online Retail |
| Citibank | John Khuu |
| Citibank | Zelle: John Khuu |
| Citibank | Zelle: John Khuu (1995) |
| JPMorgan Chase | Andy La Sole Prop |
| JPMorgan Chase | Austin Mai Sole Proprietor |
| JPMorgan Chase | Benson Wan Sole Prop |
| JPMorgan Chase | Bowee Yu |
| JPMorgan Chase | Eric Yeung |
| JPMorgan Chase | Jelen Wu Sole Prop |
| JPMorgan Chase | Jenny Wu Sole Prop |
| JPMorgan Chase | Jimmy Suen Sole Prop |
| JPMorgan Chase | Jonathan Xu Sole Prop |
| JPMorgan Chase | Marvin Chen Sole Prop |
| JPMorgan Chase | Patrick Li |
| JPMorgan Chase | Patrick Li Sole Prop |
| JPMorgan Chase | SamSon Zheng Sole Proprietor |
| JPMorgan Chase | Tony Tan Sole Prop |
| Wells Fargo | Anthony Mui Sole Proprietor |
| Wells Fargo | Economy Connecting USA INC |
| Wells Fargo | Jeff Tung Sole Proprietor |
| Wells Fargo | Jessi Le Sole Prop |
| Wells Fargo | Lester Wong Sole Prop |

6. During the course of the conspiracy, **John Khuu** engaged in dozens of financial transactions involving the sale of BTC in exchange for $235,932.00.

All in violation of 18 U.S.C. § 1956(h).

**Information – Page 6**

## COUNT 2

Violation: 18 U.S.C. § 371 (Conspiracy to Operate an Unlicensed Money Transmitting Business)

1. The General Allegations sections of this information are realleged and incorporated by reference as though fully set forth herein.

2. From in or about January 2020, and continuing through in or about October 2020, the exact dates being unknown, in the Eastern District of Texas, and elsewhere, the defendant, **John Khuu**, did knowingly combine, conspire, and agree with other persons, both known and unknown, to commit and abet certain offenses against the United States in violation of 18 U.S.C. § 1960, that is:

> to knowingly conduct, control, manage, supervise, direct, or own all or part of an unlicensed money transmitting business which affected interstate or foreign commerce in some manner or degree without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable, or while failing to comply with the money transmitting business registration requirements under 31 U.S.C. § 5330 or regulations prescribed under that section.

## Object of the Conspiracy

3. It was the purpose of the conspiracy for the defendant and his co-conspirators to operate an unlicensed money transmitting business in order to unlawfully and unjustly enrich themselves by transmitting funds on behalf of others.

## Manner and Means of the Conspiracy

The manner and means by which the defendant and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4. To achieve the goals of the conspiracy, **John Khuu** operated an unlicensed money transmitting business.

5. **John Khuu** operated an unlicensed money transmitting business without an appropriate money transmitting license from the State of Texas or the State of California where such operation is punishable as a felony under State law.

6. **John Khuu** failed to comply with the money transmitting business registration requirements under section 5330 of Title 31, United States Code, and the regulations prescribed under such section.

7. To further the conspiracy, **John Khuu** and his co-conspirators opened bank accounts, under false and fictitious pretenses, in order to transmit funds.

8. **John Khuu** sent his co-conspirators' bank account information to others who agreed to receive proceeds in the form of BTC. For such accounts, **Khuu** would, at a minimum, include the name on the account, address, the account numbers, and the routing numbers. The list below includes the accounts which **Khuu** provided:

**Information – Page 8**

| Bank | Account Name |
|---|---|
| Bank of America | HTH Resale LLC |
| Bank of America | Li Online Retail |
| Citibank | John Khuu |
| Citibank | Zelle: John Khuu |
| Citibank | Zelle: John Khuu (1995) |
| JPMorgan Chase | Andy La Sole Prop |
| JPMorgan Chase | Austin Mai Sole Proprietor |
| JPMorgan Chase | Benson Wan Sole Prop |
| JPMorgan Chase | Bowee Yu |
| JPMorgan Chase | Eric Yeung |
| JPMorgan Chase | Jelen Wu Sole Prop |
| JPMorgan Chase | Jenny Wu Sole Prop |
| JPMorgan Chase | Jimmy Suen Sole Prop |
| JPMorgan Chase | Jonathan Xu Sole Prop |
| JPMorgan Chase | Marvin Chen Sole Prop |
| JPMorgan Chase | Patrick Li |
| JPMorgan Chase | Patrick Li Sole Prop |
| JPMorgan Chase | SamSon Zheng Sole Proprietor |
| JPMorgan Chase | Tony Tan Sole Prop |
| Wells Fargo | Anthony Mui Sole Proprietor |
| Wells Fargo | Economy Connecting USA INC |
| Wells Fargo | Jeff Tung Sole Proprietor |
| Wells Fargo | Jessi Le Sole Prop |
| Wells Fargo | Lester Wong Sole Prop |

9. **John Khuu's** unlicensed money transmitting business provided others with a means to transfer money outside of the conventional financial institutions system.

10. During the course of the conspiracy, **John Khuu** engaged in hundreds of financial transactions involving the sale of BTC in exchange for more than $5,000,000.00.

## Overt Acts

In furtherance of the conspiracy and to achieve its objects and purpose, the following overt acts, among others, were committed in the Eastern District of Texas and elsewhere:

11. On or about January 27, 2020:

    a. **John Khuu** negotiated a trade of BTC for a counter cash deposit of $6,200.

    b. A cash deposit of $6,200.00 was made into a Chase account designated by **Khuu** in the name of "Austin Mai Sole Proprietor."

    c. After the deposit was completed, **Khuu** deposited the BTC into a specific cryptocurrency account controlled by an individual in the Eastern District of Texas.

12. On or about January 27, 2020:

    a. **John Khuu** negotiated a trade of BTC for a counter cash deposit of $500.00.

    b. A cash deposit of $500.00 was made into a Chase account designated by **Khuu** in the name of "Austin Mai Sole Proprietor."

    c. After the deposit was completed, **Khuu** deposited the BTC into a specific cryptocurrency account controlled by an individual in the Eastern District of Texas.

13. On or about January 27, 2020:

    a. **John Khuu** negotiated a trade of BTC for a counter cash deposit of $8,800.00.

    b. A cash deposit of $8,800.00 was made into a Wells Fargo account designated by **Khuu** in the name of "Jeff Tung Sole Prop."

    c. After the deposit was completed, **Khuu** deposited the BTC into a specific cryptocurrency account controlled by an individual in the Eastern District of Texas.

14. On or about April 18, 2020:

    a. **John Khuu** negotiated a trade of BTC for counter cash deposits of $31,000.00 and $6,460.00.

    b. Thirteen separate cash deposits were made into accounts designated by **Khuu**. The table below provides a summary of the transactions:

    | Bank | Account Name | Amount |
    |---|---|---|
    | Wells Fargo | Anthony Mui Sole Proprietor | $12,740.00 |
    | Citibank | Zelle: John Khuu | $18,720.00 |
    | JPMorgan Chase | Jonathan Xu Sole Prop | $6,000.00 |

    c. After the deposits were completed, **Khuu** deposited the BTC into a specific cryptocurrency account controlled by an individual in the Eastern District of Texas.

15. Beginning on or about April 30, 2020, and continuing to on or about May 7, 2020:

   a. **John Khuu** negotiated trades of BTC for counter cash deposits totaling $473,248.00.

   b. One hundred eighteen separate cash deposits were made into accounts designated by **Khuu**. The table below provides a summary of the transactions:

   | Bank | Account Name | Amount |
   |---|---|---|
   | Bank of America | Li Online Retail | $13,413.00 |
   | Citibank | Zelle: John Khuu | $31,232.00 |
   | Citibank | John Khuu | $19,000.00 |
   | Citibank | Zelle: John Khuu (1995) | $12,654.00 |
   | JPMorgan Chase | Jelen Wu Sole Prop | $35,630.00 |
   | JPMorgan Chase | Samson Zheng Sole Proprietor | $41,750.00 |
   | JPMorgan Chase | Jonathan Xu Sole Prop | $35,225.00 |
   | JPMorgan Chase | Marvin Chen Sole Prop | $45,335.00 |
   | JPMorgan Chase | Jimmy Suen Sole Prop | $26,400.00 |
   | JPMorgan Chase | Andy La Sole Prop | $8,700.00 |
   | JPMorgan Chase | Benson Wan Sole Prop | $43,337.00 |
   | JPMorgan Chase | Bowee Yu | $32,690.00 |
   | JPMorgan Chase | Eric Yeung | $28,988.00 |
   | JPMorgan Chase | Tony Tan Sole Prop | $15,680.00 |
   | Wells Fargo | Anthony Mui Sole Proprietor | $83,214.00 |

   c. After the deposits were completed, **Khuu** deposited the BTC into a specific cryptocurrency account controlled by an individual in the Eastern District of Texas.

16. On or about June 1, 2020:

   a. **John Khuu** negotiated a trade of BTC for counter cash deposits totaling $77,800.00.

    b.    Sixteen separate cash deposits were made into accounts designated by **Khuu**. The table below provides a summary of the transactions:

| Bank | Account Name | Amount |
| --- | --- | --- |
| Citibank | Zelle: John Khuu (1995) | $500.00 |
| JPMorgan Chase | Austin Mai Sole Prop | $10,750.00 |
| JPMorgan Chase | Jelen Wu Sole Prop | $9,910.00 |
| JPMorgan Chase | Samson Zheng Sole Proprietor | $9,950.00 |
| JPMorgan Chase | Jonathan Xu Sole Prop | $9,900.00 |
| JPMorgan Chase | Marvin Chen Sole Prop | $9,900.00 |
| JPMorgan Chase | Jimmy Suen Sole Prop | $8,250.00 |
| JPMorgan Chase | Benson Wan Sole Prop | $8,640.00 |
| JPMorgan Chase | Bowee Yu | $10,000.00 |

All in violation of 18 U.S.C. § 371.

## COUNT 3

Violation: 21 U.S.C. §§ 952(a),
960(a)(1), and (b)(3)
(Importation of MDMA)

On or about May 3, 2019, in the Northern District of California, the defendant, **John Khuu**, did knowingly and intentionally cause to be imported into the United States from the country of Germany a mixture and substance containing a detectable amount of 3,4-methylenedioxymethamphetamine (MDMA), also known as "ecstasy," a Schedule I controlled substance.

All in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and (b)(3).

## **NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE**
Pursuant to 18 U.S.C. § 982(a)(1)

1. The allegations contained in Counts 1 and 2 are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant has an interest.

2. Upon conviction of any violation of 18 U.S.C. §§ 1956, 1957, or 1960, the defendant, **John Khuu** shall forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1).

3. The property which is subject to forfeiture, includes but is not limited to the following:

   a. Cash Proceeds

   A sum of money equal to $5,356,828.28 in United States currency, and all interest and proceeds traceable thereto, representing the proceeds of the offense or the amount of property involved in the offenses alleged in the information, for which the defendant is personally liable;

   b. All virtual currency, derived from and/or associated, with devices, storage methods, and softwares, including cold storage devices, paper wallets, software wallets, and ledgers associated with virtual currencies, private keys, and recovery seeds owned or controlled by **John Khuu**; and

   c. $159,624.00 in U.S. currency seized from **John Khuu**.

4.   Pursuant to 21 U.S.C. § 853(p), as incorporated by reference by 18 U.S.C. § 982(b), if any of the forfeitable property, or any portion thereof, as a result of any act or omission of the defendant:

   a. Cannot be located upon the exercise of due diligence;

   b. Has been transferred, or sold to, or deposited with a third party;

   c. Has been placed beyond the jurisdiction of the Court;

   d. Has been substantially diminished in value; or

   e. Has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek the forfeiture of other property of the defendant up to the value of the above-described forfeitable properties, including, but not limited to, any identifiable property in the name of **John Khuu**.

5.   By virtue of the commission of the offenses alleged in this information, any and all interest the defendant has in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to 18 U.S.C. § 982(a)(1).

All pursuant to 18 U.S.C. § 982(a)(1) and the procedures set forth at 21 U.S.C. § 853, as made applicable through 18 U.S.C. § 982(b)(1).

    DAMIEN M. DIGGS
    UNITED STATES ATTORNEY

    */s/ Nathaniel C. Kummerfeld*
    NATHANIEL C. KUMMERFELD
    ASSISTANT UNITED STATES ATTORNEY

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | No. 6:22-CR-62 |
| v. | § | JUDGE JCB/JDL |
| | § | |
| JOHN KHUU | § | |

## NOTICE OF PENALTY

## COUNT 1

VIOLATION: 18 U.S.C. § 1956(h)
Conspiracy to Commit Money Laundering

PENALTY: Imprisonment of not more than ten (10) years; the greater of a fine not to exceed $250,000 or twice the value of the monetary instrument or funds involved in the transportation, transmission, or transfer, whichever is greater, or both such imprisonment and fine; and a term of supervised release of not more than three (3) years.

SPECIAL ASSESSMENT: $100.00

## COUNT 2

VIOLATION: 18 U.S.C. § 371
Conspiracy to Operate an Unlicensed Money Transmitting Business

PENALTY: Imprisonment of not more than five (5) years; the greater of a fine not to exceed $250,000, a fine not to exceed two times the gross gain to the Defendant, or a fine not to exceed two times the loss to the victim, or both such imprisonment and fine; and a term of supervised release of not more than three (3) years.

SPECIAL ASSESSMENT: $100.00

**Information – Page 16**

## COUNT 3

VIOLATION:    21 U.S.C. §§ 952(a), 960(a)(1), and (b)(3)
              Importation of MDMA

PENALTY:      Imprisonment of not more than twenty (20) years; a fine not to exceed $1,000,000, or both such imprisonment and fine; and a term of supervised release of not less than three (3) years and not to exceed life.

SPECIAL ASSESSMENT: $100.00